IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON STORRS and AMBER SMITH, | |
| Plaintiffs, | NO. 8:21-CV-175 |
| vs. | MEMORANDUM AND ORDER ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| TRAVIS ROZEBOOM, in his individual capacity, PRESTON MAAS, in his individual capacity, and BRIAN MALONE, in his individual capacity, | |
| Defendants. | |

Defendants Travis Rozeboom, Preston Maas, and Brian Malone are law enforcement officers alleged to have violated the civil rights of plaintiffs Jason Storrs and Amber Smith following a traffic stop for suspicion of shoplifting. *See generally* Filing 1. This case returns to the Court after the Eighth Circuit Court of Appeals affirmed in part and reversed in part the Court's previous order granting summary judgment to the defendants on their entitlement to qualified immunity. Filing 100 (Eighth Circuit Opinion); Filing 85 (Memorandum and Order granting summary judgment); *see also Smith v. Rozeboom*, 108 F.4th 1064 (8th Cir. 2024). The Eighth Circuit remanded two claims for further proceedings: Count I (unlawful detention) and Count V (unlawful search). Filing 100. Presently before the Court is the defendants' Motion for Summary Judgment, which seeks to have these two remanded claims resolved in their favor. Filing 107. For

the reasons below, the defendants' Motion for Summary Judgment is granted in part and denied in part.

## I. INTRODUCTION

The Eighth Circuit summarized the factual background of this case in its Opinion, as follows:

> On December 26, 2019, Officers Rozeboom and Malone responded to a shoplifting in progress at Dick's Sporting Goods in Papillion, Nebraska. A police dispatcher informed the officers that the suspects—a black male and black female—drove away to the east in a silver four-door sedan.
>
> When Malone received this information, he was near the store and saw what he thought was a silver four-door sedan traveling east. The driver was a black male, and a passenger was in the front seat. Malone notified others by radio that he had located a vehicle matching the dispatcher's description. He followed the car onto a highway and conducted a traffic stop. Rozeboom joined him.
>
> Storrs was the driver of the vehicle. The officers approached, spoke with Storrs, and saw that his passenger, Smith, was a white female. Malone told Storrs about the shoplifting report. Storrs grew angry and asked what accusation Malone was making. Malone replied that "this goes really easy, either . . . you can all go in handcuffs right now or you can answer." Storrs yelled back, "What'd I do?" Malone instructed Storrs to turn off his car, and Storrs refused.
>
> Malone asked Storrs if he "did" the shoplifting. Storrs yelled, "No, I did not, sir. I was picking my girlfriend up from work." Smith, the female passenger, called Malone a "racist piece of crap" and accused him of harassment. Storrs continued to repeat that "this is bullshit." As Storrs and Smith continued to yell, Rozeboom radioed that they had pulled over a black male in a silver car, but that he was refusing to get out of the car. Malone again asked Storrs to turn off his car and then asked him to "have a conversation out here." Storrs refused.
>
> Around this time, Officer Maas arrived on the scene to assist. Malone again asked Storrs to leave the vehicle and talk to him. Storrs accused the officers of racism, but nonetheless exited the car. Smith also got out and began recording the events on her phone. Malone asked Storrs to put his hands behind his back, and Maas instructed Storrs to turn around. Storrs did not comply. Maas asked him again to turn around. Storrs complied, and Maas twice told him to "wait right there." Storrs turned back around to face the officers, crossed his arms, and said, "No, I'm not under arrest." Maas asked him a third time to turn around because he was "being detained." Storrs insisted that he was not.

2

On hearing that Storrs was being detained, Smith stood directly in front of him, between Storrs and the officers. She demanded to know why he was being detained and asserted that the officers could not detain him. As she yelled, Maas twice asked her to "come this way," away from Storrs. When he asked a third time, he grabbed her arm to move her. Smith screamed and struggled. Storrs lunged toward Smith. Rozeboom tased Storrs. Storrs fell to the ground. Maas and Rozeboom restrained and handcuffed Storrs. As Smith continued recording, Malone grabbed her and pushed her against the car. Malone then brought Smith to the ground, restrained her, and handcuffed her.

The officers placed Storrs and Smith in separate squad cars. Maas spoke with Storrs, while Malone and Rozeboom tried to interview Smith. Smith declined to speak with them. Malone then noted for the first time that there was "a heavy odor of marijuana." Rozeboom replied, "Yeah, I keep getting that."

Malone and Rozeboom approached Maas and Storrs. Maas asked Storrs if there was anything in the car that did not belong to him. Storrs said that they could not go in his car. Maas explained that he "smell[ed] marijuana coming from you and the car," and asked if there was marijuana or anything that "shouldn't be" in the car. Storrs said, "No."

Rozeboom, Malone, and Maas then discussed how to proceed. Rozeboom acknowledged that Smith did not match the dispatcher's description, but said that an officer was heading to Dick's Sporting Goods to get an image of the shoplifters. Maas stated that there was probable cause to search the car in the meantime, and Malone interjected, "Yeah, there's an odor of marijuana." Maas agreed. Malone searched the car and a purse that he found inside the car. He told the other officers that he found nothing, "not even paraphernalia or drugs," although his written report later stated that he found "small pieces of marijuana" in the car.

Rozeboom then received a telephone call and learned that the shoplifting suspects were actually four black females. After running a records check on Storrs and Smith, the officers released them.

*Smith v. Rozeboom*, 108 F.4th 1064, 1067–68 (8th Cir. 2024).

On these facts, this Court previously determined that the officers were entitled to qualified immunity on all claims and therefore granted summary judgment to the defendants on that basis. *See* Filing 85. The Eighth Circuit largely agreed with this Court's analysis but remanded two claims for further consideration by the Court: Count I (unlawful detention) and Count V (unlawful search). *Smith*, 108 F.4th at 1069–1070, 1072.

3

The defendants again seek summary judgment establishing qualified immunity on these two remaining claims. In support of their new Motion for Summary Judgment, each of the three defendants has submitted an affidavit and a copy of his police report. Filing 109. These submissions indicate that the officers detected the odor of marijuana emanating from the vehicle, and Officer Malone's affidavit states that he uncovered "small remnants of marijuana on the baseboards of the driver's and passenger's side of the vehicle." Filing 109-1 at 2–3 (¶¶ 11, 19). Officer Malone further states that Storrs "conduct[ed] an improper turn" shortly before the traffic stop. Filing 109-1 at 2 (¶ 6).

## II. ANALYSIS

### A. Applicable Standards

Federal Rule of Civil Procedure 56(a) provides, "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." *Beaulieu v. Stockwell*, 46 F.4th 871, 875 (8th Cir. 2022) (citations omitted). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

"Section 1983 provides a civil cause of action against any person who, under color of state law, causes a deprivation of the rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011) (citing 42 U.S.C.

§ 1983). "When a state actor is sued in her individual capacity, she can plead an affirmative defense of qualified immunity." *Id.* (citing *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009)). To deny a claim of qualified immunity, the Court must find that "(1) [ ] the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) [ ] that right was clearly established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)).

Relevant here, it is "clearly established that detention must be supported by reasonable suspicion" under the Fourth Amendment. *Smith*, 108 F.4th at 1069 (citing *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)). It is also clearly established that "[t]he smell of marijuana in a vehicle can establish probable cause to search the vehicle for drugs." *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013).

### B.  The Unlawful Detention Claim

This Court initially found that the plaintiffs abandoned any claim of unreasonable detention due to continued detention after the initial stop, but the Eighth Circuit disagreed and held that this claim was preserved. *Smith*, 108 F.4th at 1069. The Eighth Circuit held that "no reasonable suspicion existed to continue detaining the pair for shoplifting after observing that Smith was white." *Id.* But the detention later became justified when the officers "had probable cause to believe that Storrs and Smith were obstructing a peace officer in violation of Nebraska law." *Id.* at 1070. Accordingly, the Eighth Circuit stated,

> What remains of the unlawful detention claim, therefore, is the time between when the officers saw that Smith did not match the dispatcher's description and when an officer reasonably discerned probable cause to believe that Smith and

Storrs were committing the offense of obstructing a peace officer.[1] The officers do not raise on appeal other potential grounds for prolonging the detention, such as a traffic violation or the odor of marijuana, so those arguments must be raised in the district court if at all.

*Smith*, 108 F.4th at 1070. The defendants argue that the prolonged detention was justified for several reasons.

### 1. *Traffic Violation*

The defendants argue that continued detention was justified by a traffic violation. Filing 111 at 7. This argument was explicitly left open by the Eighth Circuit. *Smith*, 108 F.4th at 1070 (stating "other potential grounds for prolonging the detention, such as a traffic violation . . . must be raised in the district court if at all"). The defendants state, "It is undisputed that, along with suspecting the Vehicle and its occupants to be involved in the shoplifting complaint, Malone observed the Vehicle conducting an improper turn." Filing 111 at 8. It is undisputed that Officer Malone's affidavit is consistent with this statement, but the plaintiffs argue that Storrs "did not make an improper turn." Filing 114 at 2 (¶ 8). Indeed, in their reply brief, the defendants concede that "video does not clearly depict the improper turn." Filing 120 at 5. Malone's uncorroborated testimony alone is insufficient to determine that a traffic violation preceded the traffic stop as a matter of law. *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (reversing where "the district court improperly weighed the evidence and improperly determined that [a witness's] testimony was credible"). Because a jury could reasonably conclude that Storrs "did not make an improper turn," Filing 114 at 2 (¶ 8), it would be improper to grant summary

---

[1] The defendants argue "suspicion that Plaintiffs were involved in the shoplifting incident" justified the continued detention, Filing 111 at 9–10, but this contention is squarely foreclosed by the Eighth Circuit's Opinion on this issue, *Smith*, 108 F.4th at 1069 (concluding "that the officers could not continue to detain Storrs and Smith based on reasonable suspicion of shoplifting" after observing "that the passenger was a white female"). This line of argument merits no further consideration or discussion.

judgment on this basis. *Schilf*, 687 F.3d at 948 ("An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party.").

   2.   *Odor of Marijuana*

   The defendants contend that continued detention was justified by the odor of marijuana. This argument regarding the continued detention claim was explicitly left open by the Eighth Circuit. *Smith*, 108 F.4th at 1070 (stating "other potential grounds for prolonging the detention, such as [ ] the odor of marijuana, . . . must be raised in the district court if at all"). But later when discussing the illegal search claim, the Eighth Circuit stated "that there is a genuine dispute about whether an odor was present. That factual dispute cannot be resolved by summary judgment." *Id.* at 1072. The Court declines to hold as a matter of law that an odor of marijuana justified continued detention when the reviewing court specifically stated that this precise issue "cannot be resolved by summary judgment." *Id.*

   3.   *Obstruction*

   The defendants contend that there was probable cause to believe the plaintiffs obstructed law enforcement numerous times at the beginning of the traffic stop. The defendants argue obstruction occurred:

- "within the first eight seconds," when the plaintiffs "began to repeatedly interrupt Malone";

- "as early as ten seconds into the encounter," when the plaintiffs "exhibited aggressive behavior" by "throwing their hands up in the air and clenching their fists";

- "within the first thirty seconds of the encounter" when Storrs refused to turn off the vehicle; and

- "A short while later, [when] Smith abruptly exited the Vehicle toward the Papillion Officers without being instructed to do so."

7

Filing 111 at 7 (bullet points added). According to the defendants, these "repeated refusals to comply with Malone's commands and apparent aggression in the early stages of the stop constituted obstruction under Nebraska law, and the Papillion Officers were justified to continue the detention of Plaintiffs." Filing 111 at 7.

The Eighth Circuit stated that the plaintiffs' continued detention was unjustified absent probable cause unrelated to shoplifting. *Smith*, 108 F.4th at 1070. The Eighth Circuit reasoned that the shoplifting report referred to a black female with a black male, but "after the officers stopped the vehicle and approached on foot, they could see that the passenger was a white female." *Id.* All the alleged acts of obstruction identified by the defendants necessarily occurred "after the officers stopped the vehicle and approached on foot," *id.*, as this was the first interaction between the parties. This timeline means there was at least some period—namely, immediately following observation of Smith—where the defendants detained the plaintiffs without reasonable suspicion.

The question remains: after seeing that Smith was white, how long did the defendants detain the plaintiffs without probable cause? *See id.* (limiting the unlawful detention claim to "the time between when the officers saw that Smith did not match the dispatcher's description and when an officer reasonably discerned probable cause to believe that Smith and Storrs were committing the offense of obstructing a peace officer"). Under Nebraska law, in relevant part, "A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders [ ] the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority." Neb. Rev. Stat. 28-906(1). The statute "proscribes only conduct that involves using or threatening to use 'violence, force, physical

8

interference, or obstacle.'" *State v. Ferrin*, 942 N.W.2d 404, 413 (Neb. 2020). Moreover, "the mere verbal refusal to provide information to an officer" is not obstruction within the meaning of the statute. *Id.* at 414–15. But "threats can be expressed verbally, as well as through gestures and physical acts" in violation of Neb. Rev. Stat. 28-906(1). *In re Elijahking F.*, 982 N.W.2d 516, 524 (Neb. 2022).

Surely, as recognized by the Eighth Circuit, by the time Smith "stood in front of Storrs and used 'physical interference' to block his detention," the defendants "had probable cause to believe that Smith was obstructing a peace officer," which justified continued detention of Smith. *Smith*, 108 F.4th at 1070. Likewise, the defendants had probable cause to believe that Storrs committed the crime of obstruction when he refused to comply with the defendants' instruction "to stay in place with his hands behind his back because he was 'being detained.'" *Id.* (explaining that Storrs instead "crossed his arms, continued moving around, and repeatedly asserted that he was not being detained"). The Eighth Circuit did not indicate whether the plaintiffs' other actions in the interim could have risen to the level of obstruction, as the defendants now argue. These actions include both plaintiffs' angry interruptions and gestures, Storrs's refusal to turn off the car when asked (twice), and Storrs's refusal to get out of the car when asked. *See id.* at 1068 ("Malone again asked Storrs to turn off his car and then asked him to 'have a conversation out here.' Storrs refused.").

The plaintiffs did not employ or threaten violence or force while in the vehicle, so the Court must determine whether either plaintiff employed or threatened "physical interference" or "obstacle." *Ferrin*, 942 N.W.2d at 413. Having reviewed the video evidence taken when the plaintiffs were inside the vehicle, the Court concludes that the plaintiffs' interruptions and gestures, albeit angry and animated, did not threaten physical interference or obstacle under § 28-906(1).

9

On the contrary, these acts were more akin to "the mere verbal refusal to provide information to an officer." *Id.* at 414–15; *see also Smith*, 108 F.4th at 1067 (Storrs denying shoplifting, calling Officer Malone racist, and saying, "This is bullshit").

However, Storrs's refusal to turn off the car and exit the vehicle furnished the defendants with probable cause to believe he violated § 28-906(1), which justified detaining the plaintiffs. The Nebraska Supreme Court has stated that "repeatedly refus[ing] to comply with police orders to exit a vehicle during a traffic stop is sufficient to show the use of either 'physical interference' or 'obstacle' under § 28-906(1)." *Ferrin*, 942 N.W.2d at 415. Thus, the repeated refusal to exit a vehicle constitutes obstruction as a matter of law. In this case, the video evidence demonstrates that Storrs refused two instructions to turn off the vehicle and one instruction to exit the vehicle. Filing 109-1. Although not precisely the same facts that existed in *Ferrin*, the *Ferrin* case illustrates that Storrs's actions threatened "physical interference" or "obstacle" under § 28-906(1). The defendants reasonably suspected that Storrs's repeated refusal to turn off the vehicle and refusal to get out of the vehicle was an implicit threat that he might throw the vehicle into drive and flee to evade arrest.[2] Nothing indicates that Storrs did not hear or understand Officer Malone's repeated orders to turn off the vehicle. To the contrary, the video evidence demonstrates that after the first order, Storrs stated, "I didn't do shit. What the fuck did I do?" Filing 109-1. And after Officer Malone gave the second order to turn off the vehicle over a minute later, Storrs responded, "I'm not doing shit." Filing 109-1. Extrapolating from *Ferrin*, the Court holds that a suspect's repeated refusal of a lawful order from law enforcement to turn off a vehicle constitutes a violation

---

[2] The repeated refusal to turn off the engine is potentially even more obstructive than the repeated refusal to exit the vehicle, recognized as a violation of § 28-906(1) in *Ferrin*, 942 N.W.2d at 415, because a running vehicle with a driver in the car poses immediate danger to the police, the person pulled over, and other drivers on the road.

of § 28-906(1) as a matter of law. Alternatively, the Court holds that under the specific circumstances of this case, no reasonable jury could find that the defendants lacked probable cause to believe Storrs violated § 28-906(1) after his second refusal to turn off the ignition, along with his refusal to get out of the car. *Schilf*, 687 F.3d at 948.

    *4. Summary*

    The Eighth Circuit left open the possibility that the plaintiffs' detention was justified by "a traffic violation or the odor of marijuana," *Smith*, 108 F.4th at 1070, and the defendants argued that both these circumstances were present. Whether these circumstances were present cannot be resolved by summary judgment, however, due to genuine issues of material fact that must be resolved by a jury. The Court notes that if a jury finds either that a traffic violation occurred or that the defendants detected an odor of marijuana upon approaching the vehicle, the plaintiffs' unlawful detention claim would in all likelihood be foreclosed. *See United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013) ("After a law enforcement officer initiates a traffic stop, the officer 'may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" (quoting *United States v. Barragan*, 379 F.3d 524, 528 (8th Cir. 2004))); *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) ("[A]fter [the officer] smelled burnt marijuana emanating from appellant's clothes and the interior of appellant's car, he had a 'particularized and objective basis' for suspecting appellant was or had recently engaged in criminal activity, that is, using marijuana.").

    If a jury determines that there was some period of unlawful detention unjustified by a traffic violation or the odor of marijuana, the plaintiff's unlawful detention claim is limited to "the time between when the officers saw that Smith did not match the dispatcher's description and

when an officer reasonably discerned probable cause to believe that Smith and Storrs were committing the offense of obstructing a peace officer." *Smith*, 108 F.4th at 1070. The Court held above that the officers had the requisite probable cause after Storrs refused to turn off the vehicle for the second time. Thus, the potential period of unlawful detention—that is, the time between (1) the defendants approached the vehicle and observed that Smith was white and (2) Storrs's second refusal to turn off the vehicle—is no longer than two minutes. Filing 109-1. But nothing in this Order precludes a jury from determining that the defendants had probable cause to believe Storrs violated § 28-906(1) earlier, such as when Storrs first refused to turn off the vehicle, approximately thirty seconds after the officers approached the vehicle and observed Smith. Accordingly, to the extent that the defendant's unlawful detention claim is further limited by this Order as described above, the defendant's Motion for Summary Judgment is granted.

### C.  The Unlawful Search Claim

The Eighth Circuit undoubtedly left open for additional argument whether the defendants were entitled to qualified immunity on the unlawful *detention* claim, discussed above. *See Smith*, 108 F.4th at 1070 ("The officers do not raise on appeal other potential grounds for prolonging the detention, such as a traffic violation or the odor of marijuana, so those arguments must be raised in the district court if at all."). Not so for the issue of qualified immunity on the unlawful *search* claim. The only basis for qualified immunity asserted by the defendants is that the search of the plaintiffs' vehicle was justified by the odor of marijuana. *See* Filing 111 at 11–14. "The smell of marijuana in a vehicle can establish probable cause to search the vehicle for drugs." *Beard*, 708 F.3d at 1065. But the Eighth Circuit explicitly stated that

> there is a genuine dispute about whether an odor was present. That factual dispute cannot be resolved by summary judgment. . . . Whether [Officers Malone] or Maas

perceived an odor of marijuana to support the determination is a disputed issue of fact.

*Smith*, 108 F.4th at 1072.

The Court is bound to apply Eighth Circuit precedent. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("[A] lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions. This is true even if the lower court thinks the precedent is in tension with some other line of decisions." (internal quotation marks and citations omitted)); *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (noting that district courts located within the Eighth Circuit are "bound . . . to apply the precedent of this Circuit"); *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008) (noting it is "fundamental error" to disregard circuit precedent). The Eighth Circuit unequivocally stated that a genuine issue of material fact—that is, whether there was an odor of marijuana emanating from the plaintiffs' vehicle—exists as to the unlawful search claim. *Smith*, 108 F.4th at 1072. Thus, a genuine dispute of material fact precludes summary judgment, Fed. R. Civ. P. 56(a), and the defendants are not entitled to qualified immunity on this claim.

### III. CONCLUSION

The plaintiffs' unlawful detention claim survives summary judgment but is limited to at most the approximately two-minute period after the defendants observed that Smith was white but before Storrs's second refusal to turn off the vehicle. The defendants are entitled to qualified immunity on the remainder of that claim. The plaintiffs' unlawful search claim survives summary judgment in whole. Accordingly,

IT IS ORDERED that the defendants' Motion for Summary Judgment, Filing 107, is granted in part and denied in part as set out above.

13

Dated this 29th day of May, 2025.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge